This legacy to the plaintiff is a money legacy, notwithstanding 1 P. Wil., 127, for, being a bequest of money, if it be not a specific legacy, it must of consequence stand in the rank of a pecuniary one. A legacy of money is specific only in such cases where the money is identified and distinguished from all other money; as money in such a bag, or in such a bond, or to be paid out of such a security, or (229) in such hands. 1 Atk., 508. But it is not a lost legacy, as contended for by the defendant's counsel; for it is not made payable out of any particular fund. Had it been, and the fund had failed, it would have been lost, as he contended. 2 Brown Chan., 125. Here, it is not said out of what part of the estate it shall be paid, and of course, by the rule of law, must be paid out of the residuary part. 2 Ves., 563; 1 Atk., 414, 418; 1 P. Wil., 404.
The residue mentioned in this will is argued to be specific, as negroes are the subject of it, and they will pass by the assent of the executor. 1 P. Wil., 540. Where the legacy is specific, it will pass by the assent of the executor; but every legacy which will pass by the assent of the executor is not therefore specific. The residue to Mrs. Nash in this case was of negroes; but it is not specific. There is no case in the books where a residuum hath been held to be a specific legacy. A residuum is the gleanings of an estate remaining after debts and legacies paid. 2 Bl. Com., 514; 1 Atk., 418; 3 P. Wil., 385; 2 Ves., 563; 1 P. Wil., 404. In *Page 179 
each of these cases, it is admitted on all hands, that if the legacy was specific, it was lost; but if a legacy of quantity only, it was to be made good out of the residuum. The rest of my estate cannot, in the nature of things, be a specific legacy, exempted from any dependence on the other legacies preceding it. It is a relative term; its quantity, and even its existence, depends entirely upon the previous raising of the particular legacies. There can be no residue if there be not estate enough to discharge the particular legacies to which it relates. Its quantity must depend upon the quantity of the particular legacies to be raised out of the testator's estate. It diminishes or increases in proportion to the largeness or smallness of the particular legacies which must first be taken from the net estate; and the question about contribution never arises but where what was to form the residuum is exhausted. 2 Ves., 562. Whilst there remains any of the estate which forms the residuum, it is liable to be resorted to by the particular legatees, unless their legacies are specific, or out of a particular fund.
It is argued by the defendant's counsel that as this legacy claimed by the plaintiff is a pecuniary one, and the residue specific, that the residue shall not come into contribution with it. It is said, on the other side, that this legacy claimed by the plaintiff is a specific one, because to be laid out in land; and that money to be laid out in land shall be taken as land; and that a devise of land is specific. It is so; but the argument is fallacious. It proceeds upon this rule of equity, that (230) what ought to have been done is considered as being done. The rule is here misapplied, and the whole doctrine built upon it. This rule is never applied in a dispute between a residuary and particular legatee; but always between the heir and personal representative of the particular legatee. The heir claims the money, though not yet laid out in land, as land, and founds his equity upon this, that the delay of the executor or trustee to lay it out in land, as he ought to have done, shall neither prejudice him nor benefit the personal representative. Here the Court will say what the executor ought to have done previous to the death of the legatee shall be considered as having been done, by force of which fiction the money will now go into the same hands as the land to be purchased with it would have done; and thus no one will be injured by the delay of the trustee. The misapplication of this rule caused the mistake in P. Wil., 127, noticed in 1 P. Wil., 539, and would occasion the same mistake now, were it not attended to. This is the only point established by the cases cited for the plaintiff, viz.: 1 P. Wil., 127; 1 Vern., 52, 471; 2 Vern., 536, 588, 679; 1 P. Wil., 172; 3 Atk., 254; 3 P. Wil., 212. But there is no dispute in the present case between the *Page 180 
heirs and personal representatives of the legatee, and therefore all those authorities are to be laid out of the case.
But if it were not the rule of law that the residuum were to be diminished by the particular legacies, in proportion to their amount, there is enough in this will to show it to have been the testator's intention that the debts at least should be paid out of the residuary part; and then it will follow that the particular legacies are not to be affected by the debts. After giving all the residue of his estate to his younger children, he gives power to his executors to sell any part of the land included in this residuum when they shall see occasion; and he adds, in the next sentence, that they shall collect and pay his debts as fast as possible, and pay the surplus of the moneys into his wife's hands for the benefit of his said younger children. His debts were in his contemplation when he directed this sale of the lands, and it was also in his contemplation that a considerable part of the money to be raised by these sales was to be exhausted by his executors, and the surplus to go to his younger (231) children, whose lands were thus to be sold if necessary in the opinion of the executors. It seems evident, therefore, he contemplated the payment of his debts out of the property comprehended in this residue to his younger children. It is true, he seemed to suppose the lands would be fully sufficient for this purpose; but it is equally true, he supposed his particular legacies would not be liable to those debts; and then the rule of law more strongly applies. It is the strong bent of my inclination to make this legacy contribute, because the testator supposed his negro part of the residuum, at least, would be left for his wife and younger children, and possibly a surplus out of his lands to be sold. He did not foresee the great deficiency that would happen, and that it would become necessary to fall upon the negroes intended for his younger children. But yet I cannot persuade myself to depart from a rule of law so well established, and say that these negroes, being a part of the residuum, shall only abate in proportion with the particular legatees.
It is argued that although this be a specific legacy, the residuary legatees are not bound to contribute, because these legacies are of a different species of property, namely, of negroes and of money; and where there are two specific legatees of two different subjects, the one shall not contribute to make good the other. 2 Ves., 563. I take the law to be thus, where specific legacies are given to several persons, of several parcels of a particular subject, and that subject fails in quantity to supply all, there each legatee must abate in proportion; when, at the same time, other specific legatees of a different subject shall not contribute at all, or be at all affected by the deficiency. For in such case, *Page 181 
who shall say which one of the legatees shall be totally disappointed? And yet one, or more, must be totally disappointed, unless an abatement should take place. But when all the legacies, which were pecuniary, or unspecific legacies, are exhausted in the payment of debts, and there still remain debts to be paid, then all the specific legacies shall abate in proportion. For who shall say which of these specific legatees shall be disappointed of his legacy? They are all equally objects of the testator's bounty. 1 P. Wil., 404; 3 Bac. Ab., 483. In the present case there is no dispute between specific legatees of the same subject, insufficient for the payment of all, nor yet between specific legatees, where all other parts of the estate are exhausted. There yet remains a large residuum. 1 P. Wil., 404. But the truth is, neither of these legacies is specific; neither the plaintiff's nor that of the residuary legatee; (232) and, therefore, this argument is without foundation.
It follows, then, that the administrator de bonis non must pay the legacy claimed by the plaintiff out of the residue bequeathed to the younger children; and if that is not sufficient, then out of that part of the residue bequeathed to Mrs. Nash, for her legacy, though general and residuary as to the first children, is particular in respect of the younger children.
The only question then remaining is, What shall the plaintiff recover? The testator, after bequeathing a number of negroes to the plaintiff, particularly naming them, adds, "and cash sufficient in the opinion of my executors hereafter to be named, not exceeding £ 1,000, to purchase a tract of land on Tar River." The quantity of money is left uncertain, and the extent and quality of the land also. It is argued by the counsel that this was left in the discretion of the executors; that they might be at liberty to judge of the price of the tract to be purchased, from the circumstances in which they might afterwards find the estate; and that as the executors were to have regulated their discretion by these circumstances, so will the Court, now the matter is brought before them. No authorities were cited in support of this position, and there are but few to be found. There is one passage in Swin., 496, and another in God., 424, sec. 16, which favor it. In the latter of these books it is said from the civil law that the ordinary shall moderate the sum with respect to the testator's estate. In the former of them it is said that if such an uncertain legacy be given for the performance of some act or other consideration, etc., etc., so much is understood to be disposed as may satisfy or answer the purpose whereunto it is appointed, and as the ordinary, considering the necessity of the thing, and the ability of the testator, and the continuance of the gift, shall deem expedient. These books, it must be admitted, are not of the best authority; they contain collections, taken *Page 182 
partly from cases adjudged in our law and partly from the civil law; yet, as the rule laid down by them is so equitable in itself, and has not been contradicted by any adjudged case, it seems fit to be adopted in the present case, and then the Court will regulate their discretion by a respect to what, in all probability, the testator supposed was the net estate he had provided for his younger children, which seems to have been the slave part of their residue, or, in other words, he probably (233) supposed the plaintiff would have £ 1,000, when they had the whole of the negroes comprehended in their residue. Upon this principle, the plaintiff's legacy should be diminished in proportion to the diminution of their residuum; and for the purpose of ascertaining this, let the master ascertain the value of all that part of their residue that yet remains unsold, except negroes, and deduct that value from the debts remaining unpaid. Let him ascertain the value of the £ 1,000 legacy, dollars being now estimated at 10 s. and at 12 s. when the will was made. Let him then ascertain the value of the slaves contained in the residue, and what proportion the said legacy beareth to the value of the slaves, and deduct that proportion of the balance of debts, and, also, the £ 250 paid in part by the defendant, from the said legacy, and report the balance to this Court.
This report was made, and a decree made for the balance, with interest.